UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WHITE OAK POWER CONSTRUCTORS, | ) | |
| | ) | |
| Plaintiff, | ) | Honorable Judge _____ |
| | ) | |
| v. | ) | |
| | ) | Case No. _____ |
| LEXINGTON INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COMES the Plaintiff, White Oak Power Constructors ("WOPC"), through its attorneys, Freeborn & Peters LLP, and for its Complaint for Declaratory Judgment against Defendant, Lexington Insurance Company ("Lexington") states as follows:

## NATURE OF THE ACTION

1. By this action, WOPC seeks a declaration that Lexington is obligated to provide to WOPC the insurance coverage Lexington contractually promised to provide under an insurance policy.

## JURISDICTION AND VENUE

2. Plaintiff, WOPC, is a joint venture doing business in the States of Illinois, Colorado and Maryland. WOPC was formed for the purpose of engineering, procuring and constructing a new 1000MW Combined Cycle Power Plant in Rising Sun, Maryland known as the Wildcat Point Cycle Project (the "Project").

3. WOPC's citizenship is determined by the citizenship of its partners, PCL Industrial Construction Company ("PCL") and Sargent & Lundy, L.L.C. ("S&L or Sargent & Lundy"). PCL is a citizen of Colorado, the state of its incorporation, and Texas, its principal

place of business. S&L, a limited liability company, has the citizenship of each of its members, which are citizens of Illinois, Tennessee, Maryland, New York, New Jersey, and Pennsylvania, and its principal place of business is in Illinois.

4.  Lexington is an insurance company incorporated in Delaware with its principal place of business in Boston, Massachusetts.

5.  This Court properly has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332 as complete diversity of citizenship exists between the parties and the amount in controversy, without interest and costs, exceeds $75,000.

6.  This Court is a proper venue because the insurance policy at issue was negotiated and brokered in Illinois and issued in Illinois to Plaintiff through Sargent & Lundy, L.L.C. Moreover, Lexington's coverage determination under the policy with respect to the underlying claim was communicated to WOPC at the offices of Sargent & Lundy in Illinois.

## STATEMENT OF FACTS

**I.    The Policy**

7.  Lexington issued Design/Build Project Specific – Protech Professional Liability insurance policy, Number 0618536292 (the "Policy"), to WOPC as the First Named Insured for the Project on a Claims-Made and Reported basis. PCL and S&L are both also individually Named Insureds under the Policy. A true and correct copy of the Declarations page of the Policy is attached hereto as Exhibit A.[1]

8.  The Policy was issued for the period of June 9, 2014 to June 1, 2017 and provides limits of liability of $25,000,000 per claim and in the aggregate, with a $15 million per-Claim and Rectification Sublimit. The policy is further subject to a $3 million Self-Insured Retention

---

[1]    Both the Declarations page and the Policy itself reflect financial and other confidential and proprietary information. The Declarations page has been partially redacted and a complete copy of the Policy is available to Lexington and will be provided to the Court during the course of this litigation.

("SIR") for all Claims (other than those arising under a Rectification Endorsement which is not at issue in the underlying claim).

9.    The Policy provides in relevant part as follows:

The Policy's Insuring Agreement F. states:

**F.    CLAIM EXPENSES:**

**Claim Expenses** in excess of the **Self-Insured Retention** *shall be paid by the Company*, and such payments reduce the available limit of liability.  The **First Named Insured** must first pay any applicable retained amount as set forth in Item 6 of the Declarations as **Self-Insured Retention.**  (emphasis supplied)

Insuring Agreement D provides:

**D.    SELF-INSURED RETENTION: OBLIGATIONS AND ALLOCATION**

1.    The Company shall have no obligation to pay or indemnify any **Claims Expenses** and/or **Damages** unless and until the **Self-Insured Retention** has been satisfied in full by the **Insureds** involved in any accident, circumstances, event and/or **Claim** reported under this policy.  The **Insured(s)** involved in any accident, circumstance, event or **Claim** shall be individually responsible for the payment of all expenses, including but not limited to **Claims Expenses** and/or **Damages** within the **Self-Insured Retention**.

2.    Upon receipt of a written notice of an incident, circumstance, event and/or **Claim**, as required by this policy, the **Program Manager** shall consult with the **Insured(s)** which sent the notice to determine whether there are any other **Insureds** who may actually or potentially be involved in connection with the incident, circumstance, event or **Claim**.  The concept of being "involved" is broader than the concept of legal liability or responsibility, and may encompass factors such as potential implication or allegation of liability or responsibility, and regardless of whether an **Insured** was actually sued or named by the claimant.  Upon identification of any such involved **Insured(s)**, the **Program Manager** will confer and/or meet with representatives of the **Insured(s)** to whom notice was sent and those other **Insureds** identified the

(collectively the "involved **Insureds**") to (a) determine whether the list of involved **Insureds** is complete and accurate, based upon the information then available; and (b) the percentage or proportion of the **Self-Insured Retention** which shall be allocated to each involved **Insured** through and including the date of final resolution through final judgment (after appeal), final award, settlement, other resolution, or disposition (with or without indemnity payment) ("Final Resolution") of the reported incident, circumstance, event or **Claim**.

Section IV.E. of the Policy provides:

**E.      SELF-INSURED RETENTION- EACH CLAIM:**

The Company's obligation, under the coverages provided by this policy to pay **Damages** or **Claim Expenses** or both on behalf of the **Insured**, applies only to the payment of **Damages** or **Claim Expenses** in excess of the **Self-Insured Retention** stated in Item 6 of the Declarations, and subject to the Limits of Liability stated in Item 5 of the Declarations.  The **Self-Insured Retention** shall be applied to the payment of **Damages** or **Claim [E]xpenses** or both. The **First Named Insured** shall be responsible for the payment in full or on a per **Claim** basis of the **Self-Insured Retention**.  With respect to **Claim Expenses** within the **Self-Insured Retention**, the **First Named Insured** shall pay the providers of services directly and promptly upon receipt of a statement for such services.  The Company may, on occasion, find it expedient to advance such payments, in which case, the **First Named Insured** shall reimburse the **Company** forthwith upon notice of such payments.

The Policy includes the following relevant Definitions:

**B.      Breach of Professional Duty** means negligence, which is the failure to meet the professional standard of care legally required or reasonably expected under the circumstances in the performance or non-performance of **Professional Services** rendered to others by the Insured which result in **Damages** for which the **Insured** is legally liable.

**D.      Claim Expenses** means:

1.      Fees charged by any lawyer designated and approved by the **Company**;

2.      All other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim,** if authorized by the **Company**.  **Claim Expenses** shall not

include the salaries of any employee of the insureds and the **Company**. **Claim Expenses** shall also not include fees charged by the **Program Manager**.

G.    **Damages** means any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies and shall include judgments and settlements and interest on judgments, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, fines or penalties imposed by law, or punitive damages, exemplary damages, or multiple damages. **Damages** also shall not include matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Damages** also shall not include **Liquidated Damages** except for liability the **Insured** would have had in the absence of such **Liquidated Damages**.

As modified by Endorsement #006, **Professional Services** is defined in the Policy to mean:

**Professional Services** means those services that the **Insured** is legally qualified to perform for others in their capacity as an architect, engineer, land surveyor, landscape architect, construction manager, scientist, technical consultant, including such services when performed on projects seeking LEED certification and/or utilizing Building Information Modeling (BIM) or as specifically defined by endorsement to this policy. **Professional Services** shall not include actual facility operation and maintenance services.

10.    WOPC has paid all premiums on the Policy and has fully complied with its terms. Through engagement of counsel approved by Lexington, WOPC has satisfied the $3 Million SIR under the Policy.

## II.    The Project

11.    The Project is a 1,000-megawatt gas-fired combined cycle power generating facility owned by Old Dominion Electric Cooperative ("ODEC") with an estimated cost at completion of in excess of $800 Million. The Project was estimated to generate enough electricity to supply 390,000 homes annually.

12.    ODEC chose the power generating technologies to be used on the Project and asked its gas turbine vendors to design, manufacture, and supply their gas turbine systems, and to

provide services to ODEC and, eventually, to ODEC's engineering, procurement, and construction contractor ("EPC Contractor").

13.     ODEC ultimately selected Mitsubishi Hitachi Power Systems Americas, Inc. ("Mitsubishi") to design, manufacture, and supply their gas turbine systems, and to provide services to ODEC and its EPC Contractor. Accordingly, in September 2013, ODEC and Mitsubishi entered into a Purchase Agreement for the supply of two gas turbines, associated generators and related components for the Project.

14.     ODEC also conducted a competitive procurement process for heat recovery steam generators and a steam turbine generator. ODEC selected Alstom Power, Inc. ("Alstom") to supply these types of generators and signed an equipment purchase agreement in November 2013 related to the same.

15.     After Mitsubishi and Alstom were selected, ODEC conducted a competitive procurement to retain its EPC contractor. Through this process, it selected WOPC. ODEC and WOPC entered into an EPC contract (the "EPC Contract") in June 2014. At the same time, ODEC, Mitsubishi and WOPC entered into an Assignment Agreement whereby ODEC assigned the majority of its rights and duties under its contract with Mitsubishi to WOPC. Additionally, through an Assignment Agreement entered into jointly by ODEC, WOPC and Alstom, ODEC assigned the majority of its rights and duties under its contract with Alstom to WOPC.

### III.     The Underlying Claim

16.     Various delays occurred on the Project, including a delay in the substantial completion date. ODEC claimed that these delays were due to WOPC's failure to properly engineer and construct the Project. WOPC sued Mitsubishi on May 9, 2017 and filed an Amended Complaint on August 4, 2017 ("the Mitsubishi Lawsuit"). The Mitsubishi Lawsuit alleges that Mitsubishi breached its contract with WOPC relating to the Project. The Mitsubishi

Lawsuit focuses on Mitsubishi's: (i) late delivery of design and engineering documents, gas turbines and other equipment; (ii) delivery of defective equipment; (iii) errors in its work; and (iv) improper charges for Technical Field Assistance.

17.     Mitsubishi answered WOPC's Amended Complaint on August 25, 2017 and included a counterclaim alleging breach of contract against WOPC for failure to pay invoices.

18.     In order to defend itself against ODEC's claims, WOPC sued Alstom and ODEC on May 24, 2017 in the United States District Court of Maryland and thereafter filed a Second Amended Complaint on December 19, 2017 ("the Alston/ODEC Lawsuit").   In its Second Amended Complaint, WOPC alleges Fraud in the Inducement (against both), Actual Fraud (against both), Constructive Fraud (against both), Concealment (against both), Breach of Contract (against both), and Quantum Meruit (against ODEC).

19.     On September 29, 2017, ODEC filed a lawsuit against WOPC in the Eastern District of Virginia.  The lawsuit alleges WOPC's construction of the Project was delayed and, as a result, WOPC breached the EPC Contract.

20.     Through various motions, all of the respective cases relating to the Project were placed in the United States District Court for the Eastern District of Virginia.   Thereafter, November 16, 2017, United States District Court for the Eastern District of Virginia consolidated the actions on a related basis into one proceeding (the "Consolidated Proceedings").   In total, the following three (3) related cases have been consolidated:

    1.      ODEC's claims against WOPC;
    2.      WOPC's claims against ODEC and Alstom; and
    3.      WOPC's claims against Mitsubishi

## IV.    Lexington's Coverage Determination

21.    WOPC timely informed Lexington of each of the cases which make up the Consolidated Proceedings.  Lexington responded on March 6, 2018 by letter with its coverage position ("Coverage Letter") under the Policy.

22.    In its Coverage Letter, Lexington acknowledged that claims in the Consolidated Proceedings were potentially covered under the Policy but offered to credit WOPC only 20% of WOPC's expenses incurred to date for the Consolidated Proceedings, while acknowledging that ODEC's claims against WOPC are potentially covered by the Policy.

23.    All claims in the Consolidated Proceedings are related to WOPC's defense of ODEC's claims and the Policy does not allow for the allocation of Claims Expenses in the manner asserted by Lexington.

24.    It is well-settled that an insurer must pay for the defense of an entire action if any cause of action is potentially covered.  Lexington's coverage position ignores this settled law, while conceding that claims in the Consolidated Proceedings are potentially covered by the terms of the Policy.

25.    Lexington further states in its Coverage Letter that it reserves its right to "reimbursement or recoupment of any defense costs it pays in the event it is later determined that Lexington did not have a duty to defend," despite the absence of any contractual right in the Policy to assert such a claim for recoupment.

## COUNT I – DECLARATORY JUDGMENT

26.    WOPC repeats and realleges the allegations set forth in paragraphs 1 through 25 above and incorporate them into this Count as if fully set forth herein.

27.    Presently there is an actual, genuine and existing controversy between WOPC and Lexington, namely whether Lexington has a duty under the terms of the Policy to provide

coverage to WOPC for Claims Expenses incurred in the Consolidated Proceedings in excess of WOPC's SIR.

28.    The Policy is a valid and enforceable written contract.

29.    WOPC has fully complied with the terms of the Policy.

30.    WOPC has satisfied the $3 million SIR required by the Policy.

31.    WOPC has properly tendered a claim to Lexington under the terms of the Policy seeking coverage for the claims in the Consolidated Proceedings.

32.    Lexington has breached and repudiated its coverage obligations under the Policy.

33.    Under the terms of the Policy and Illinois law, Lexington has a duty to provide coverage for WOPC's claims expenses in the Consolidated Proceedings and liability for any judgment or settlement of the Consolidated Proceedings in excess of WOPC's SIR.

34.    Lexington has no valid basis for refusing to provide the coverage to which WOPC is entitled under the Policy.

35.    WOPC currently is incurring significant expenses in connection with the Consolidated Proceedings.

36.    WOPC requests that the Court declare, pursuant to 28 U.S.C. §2201, that (i) Lexington has a duty to provide coverage to WOPC for those Claims Expense incurred by it in connection with the Consolidated Proceedings in excess of its $3 Million SIR and for any judgment or settlement of the Consolidated Proceedings; and (ii) Lexington is in breach of its Policy.

## REQUEST FOR RELIEF

WHEREFORE, pursuant to the Federal Declaratory Judgment Act (28 U.S.C. § 2201, *et seq.*), WHITE OAK POWER CONSTRUCTORS respectfully requests that the Court enter judgment in its favor as follows:

A.  Declaring that Lexington has a duty under the Policy to cover WOPC's Claims Expenses and any liability for any judgment or settlement in the Consolidated Proceedings;

B.  Declaring that Lexington has breached the Policy;

C.  Awarding WOPC reasonable costs and fees incurred in pursuit of this action, including attorneys' fees; and

D.  Awarding such other relief as the court deems just and proper.

Date:  May 14, 2018                    WHITE OAK POWER CONSTRUCTORS


_____ s/ Steven D. Pearson _____
Steven D. Pearson
Robin C. Dusek
**FREEBORN & PETERS LLP**
311 South Wacker Drive, Suite 3000
Chicago, IL  60606
(312) 360-6000

*Counsel for Plaintiff*